# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
### No. 25-0373V

GAIL HESS,

                Petitioner,

v.

SECRETARY OF HEALTH AND
HUMAN SERVICES,

                Respondent.

Chief Special Master Corcoran

Filed: April 17, 2026

*Ronald Craig Homer, Conway, Homer, P.C., Boston, MA, for Petitioner.*

*Jamica Marie Littles, U.S. Department of Justice, Washington, DC, for Respondent.*

## FINDINGS OF FACT[1]

On March 3, 2025, Gail Hess filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"), which she amended on May 8, 2025. Petitioner alleges that that she suffered a shoulder injury related to vaccine administration ("SIRVA") caused by an influenza ("flu") vaccine received on October 9, 2022. Amended Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters.

The parties were unable to settle the claim (ECF Nos. 20-26). Respondent contends that Petitioner has not established that her shoulder pain began within 48 hours

---

[1] Because this Fact Ruling contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at  https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Fact Ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

of vaccination. Respondent's Rule 4(c) Report at *6-8 (ECF No. 27). For the reasons set forth below, I find that Petitioner's shoulder pain likely began within 48 hours of vaccination.

## I.    Authority

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence.  The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Human Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Human Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, this rule does not always apply. "Written records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent." *Murphy v. Sec'y of Health & Human Servs.*, No. 90-882V, 1991 WL 74931, *4 (Fed. Cl. Spec. Mstr. April 25, 1991), quoted with approval in decision denying review, 23 Cl. Ct. 726, 733 (1991), *aff'd per curiam*, 968 F.2d 1226 (Fed.Cir.1992)). And the Federal Circuit recently "reject[ed] as incorrect the presumption that medical records are accurate and complete as to all the patient's physical conditions." *Kirby v. Sec'y of Health & Human Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021).

The United States Court of Federal Claims has outlined four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of Health & Human Servs.*, 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014).

The Court has also said that medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery v. Sec'y of Health & Human Servs.*, 42 Fed. Cl. 381, 391 (1998) (citing *Blutstein v. Sec'y of Health*

2

*& Human Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such fact testimony must also be determined. *Andreu v. Sec'y of Health & Human Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Human Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe*, 110 Fed. Cl. at 204 (citing Section 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Human Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

## II.    Finding of Fact

I make these findings after a complete review of the record, including all medical records, testimonial evidence, Respondent's Rule 4 report, and additional evidence filed. Specifically, I highlight the following evidence:

- The vaccination record documents that Petitioner received a flu vaccine in her left arm on October 9, 2022. Ex. 1 at 3.

- Two and a half months later (December 27, 2022), Petitioner saw her primary care provider ("PCP") via a telemedicine visit to follow up on an unrelated condition. Ex. 7 at 10. Petitioner also reported "[u]pper arm pain since she had her flu shot almost 3 months ago." *Id*. The record of this visit does not otherwise address her shoulder pain, and it appears that no diagnosis was made or treatment provided.

- About two weeks later (January 10, 2023), Petitioner saw an orthopedist for left shoulder pain. Ex. 5 at 34. She reported that her shoulder pain started on October 9, 2022, after vaccination, becoming worse later. *Id*. at 35. On examination, her left shoulder was tender in the glenohumeral joint region, and her active and passive range of motion were limited. *Id*. at 37. She also exhibited positive results on Neer's and O'Briens tests. *Id*. Petitioner was assessed with pain and an incomplete rotator cuff tear of the left shoulder. *Id*. The orthopedist administered a steroid injection and ordered an MRI. *Id*.

- Petitioner underwent a physical therapy evaluation on June 5, 2023. Ex. 12 at 56. She explained that she received a flu vaccine in October 2022, and "by that night [she] was unable to move her L arm due to pain and muscle inhibition." *Id*.

- Petitioner filed a declaration stating that she received the flu vaccine on the morning of October 9, 2022. Ex. 16 at ¶ 2. By 6 p.m. that evening, however, she could not move her left arm without severe pain. *Id*. She took over-the-counter

- medications and used ice, but "[n]othing helped." *Id*. at ¶ 3. Sleep was "impossible," as she usually sleeps on her left side. *Id*. at ¶ 4.

- Petitioner states that about a week after vaccination, she returned to the pharmacy where the vaccine was administered and told the pharmacist she was still in pain. Ex. 16 at ¶ 5. The pharmacist suggested that she give it more time. *Id*. Because the pain subsequently improved "a little", she waited in the hope that it would continue to get better. *Id*. at ¶ 6. However, by mid-November 2022 she had experienced little improvement in movement, and her left arm remained weak. *Id*.

- Petitioner recalls that at the end of December 2022, she told her PCP about her left arm pain during a regularly scheduled appointment. Ex. 16 at ¶ 8. Because the pain had persisted for three months, her PCP recommended that she see an orthopedist. *Id*.

These medical records and testimonial evidence, reviewed in their totality, establish that more likely than not Petitioner's shoulder pain began within 48 hours of vaccination, as alleged. Petitioner sought care for her shoulder pain two and a half months after vaccination, stating that her pain had been present *since* vaccination. When she saw the orthopedist two weeks later, she reported that her pain began on the day of vaccination. She told her physical therapist that the vaccination took place in the morning, and by that evening she could not move her arm without severe pain. And Respondent has not identified any records suggesting that her pain began at some other time.

Petitioner is encouraged to promptly re-engage Respondent in settlement discussions in light of this finding. If these efforts are unsuccessful, briefing will be ordered if warranted.

**Scheduling Order**

- **Petitioner shall file, by no later than <u>Friday, May 22, 2026</u>, a status report providing an update on the parties' discussions.**

- **Respondent shall file, by no later than <u>Friday, May 22, 2026</u>, a status report indicating whether he wishes to file an amended Rule 4(c) Report and, if so, proposing a deadline for it.**

**IT IS SO ORDERED.**

<u>s/Brian H. Corcoran</u>
Brian H. Corcoran
Chief Special Master

4